IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DONNA P. SCOTT, )<br>)<br>        **Plaintiff,**    )<br>)<br>v.                        )<br>)<br>KILOLO KIJAKAZI,[1]    )<br>**Acting Commissioner of the Social** )<br>**Security Administration,**    )<br>)<br>        **Defendant.**    ) | Case No. CIV-20-364-SPS |

## OPINION AND ORDER

The claimant Donna P. Scott requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was sixty-three years old at the time of the administrative hearing (Tr. 29, 220).  She completed four or more years of college, and has previously worked as an accountant and mortgage loan officer (Tr. 52-53, 253).  The claimant alleges that she has been unable to work since February 1, 2017, due to back pain (Tr. 252).

## Procedural History

On November 29, 2017, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.  Her applications were denied.  ALJ Deirdre O. Dexter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 15, 2020 (Tr. 10-18).  The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation.  She found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), *i. e.*, she could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, sit up to six hours in an eight-hour

workday, and stand/walk up to three hours in an eight-hour workday. Additionally, she found the claimant could only frequently stoop; only occasionally climb ramps/stairs, kneel, crouch, and crawl; and never climb ladders/ropes/scaffolds (Tr. 14). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as an accountant or mortgage loan officer/closer (Tr. 17-18).

## Review

The claimant contends that the ALJ erred by failing to properly evaluate the evidence in the record. Specifically, she contends that the ALJ failed to properly account for her severe back impairment when formulating the RFC; failed to consider the combination of her impairments, including obesity, insomnia, fatigue, and medication side effects; failed to properly evaluate a consultative examiner's assessment; and failed to properly account for her subjective symptoms, particularly pain. None of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ found that the claimant had the severe impairments of degenerative disc disease and obesity (Tr. 13). The relevant medical evidence reflects the claimant weighed around 177 pounds in February 2017, the same month as her alleged onset date, and her diagnoses included hypertension, obesity, low back pain, and insomnia (Tr. 318-320). By June 2018, her weight was recorded at 210 pounds (Tr. 340). She continued to receive treatment for moderate back pain, sleep difficulty, and high blood pressure (Tr. 338).

Treatment notes from Cherokee Hills Family Medicine, where the claimant largely received pain management treatment, show the claimant was treated for, *inter alia*, low back pain, insomnia, and obesity (Tr. 357). Throughout her treatment, she reported varying

degrees of pain on a scale of ten, ranging from 3/10 with medication to 6/10 with medication, but reporting 8/10 or 9/10 without medication (Tr. 355, 361, 364). However, physical examinations revealed she had normal range of motion and strength in October 2018, with no joint enlargement or tenderness for her upper and lower extremities bilaterally (Tr. 356). She was positive for joint pain in November 2018, and both back and joint pain December 2018 through April 2020, but she nevertheless had normal range of motion and strength (Tr. 358, 361, 364, 367-399, 407-409).

An April 25, 2018 x-ray of the lumbosacral spine revealed mild-to-moderate disc space narrowing at L5-S1 and endplate spurring at L2, but it was otherwise unremarkable with the exception of "very mild scoliotic convexity to the left at L2-L3" (Tr. 341). A May 28, 2019 x-ray of the lumbar spine revealed mild degenerative changes at L1 through L3, transitional lumbosacral segment with left-sided sacralization, multilevel facet arthrosis without spondylolisthesis, and atherosclerosis (Tr. 353).

On May 19, 2018, Dr. Conner Fullenwider completed a physical consultative examination of the claimant (Tr. 343-350). The claimant had some limited range of motion of the back, with pain, but the examination was largely otherwise normal (Tr. 344-350). Dr. Fullenwider noted that the claimant was unable to squat and rise from that position, unable to rise from a sitting position without assistance, and had difficulty getting up and down from the exam table (Tr. 346). Additionally, she was unable to, or had weak heel/toe walking, had abnormal tandem walking, and she could stand on one foot but not hop (Tr. 346). However, she was able to dress and undress, pick up and grasp a pen to write, and lift/carry/handle personal belongings (Tr. 346). Dr. Fullenwider did not make a functional

assessment of the claimant, other than to note his impression that the claimant had decreased range of motion of the back but that the exam was otherwise within normal limits (Tr. 346).

State reviewing physicians considered the claimant's degenerative disc disease to be a severe impairment, then determined initially and on reconsideration that she could perform the full range of light work with no additional manipulative, postural, or environmental limitations (Tr. 87-89, 102-104).

At the administrative hearing, the claimant testified that she has difficulty driving due to the sitting, and that a four and a half-hour drive can take her up to eight hours due to having to stop (Tr. 39). Additionally, she testified that her mind wanders due to her pain medications, and that the pain medications have also caused her to be slower mentally (Tr. 44-46). She stated that her pain is in her lower back (Tr. 45). She testified that at her previous job, she noticed that her concentration and memory had worsened, causing her to make mistakes (Tr. 47, 50). She estimated that she spends about twelve hours a day lying down, and that her sleep pattern is off, at least in part due to pain (Tr. 47-48). She further testified that she can sit for approximately ten minutes before needing to lay down for twenty or thirty minutes, and that she can walk around a block but does all her grocery shopping online because it is too strenuous in person unless it is for one or two items (Tr. 48-49). She also stated that she walks at a slower pace than she used to and she is not confident of her balance, and that she wonders if she should start using a cane (Tr. 49-50).

In her written decision at step four, the ALJ summarized the claimant's hearing testimony and much of the medical evidence in the record, including noting the claimant's

weight as 206 pounds at Dr. Fullenwider's exam (Tr. 14-17). As to the opinion evidence she found the state reviewing physician opinions to be non-persuasive and inconsistent with Dr. Fullenwider's consultative examination showing reduced range of motion of the lumbar spine, as well as the physical exam findings of an antalgic gait, nor did they take into account the claimant's complaints of pain (Tr. 16-17). She specifically noted that she had considered the claimant's complaints of pain but found them not entirely supported in light of the degree of medical treatment in the record, discrepancies between her assertions and the medical evidence, the medical history, and findings on examination (Tr. 16-17). She ultimately determined the claimant was not disabled.

      The claimant asserts that the ALJ's RFC is unsupported by substantial evidence, including a failure to consider her severe impairments of degenerative disc disease and obesity, as well as additional limitations related to insomnia, fatigue, and medication. She also contends that this resulted in an error in the identification of jobs she can perform at step five. An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b),

416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7.

The Court finds here that substantial evidence supports the ALJ's determination that the claimant can perform a limited range of sedentary work. The ALJ specifically discussed and accounted for, *inter alia*, her reduced range of motion, gait problems, and pain in making the determination of her RFC. The longitudinal evidence in the record does not reflect further limitations, and the ALJ clearly considered *all* the evidence in the record. *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). *See also* Soc. Sec. Rul. 19-2p, 2019 WL 2374244, at *4 (May 20, 2019) ("We will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s). Obesity in combination with another impairment(s) *may or may not* increase the severity or functional limitations of the other impairment.") (emphasis added). Furthermore, the claimant has pointed to no *medical documentation* providing further limitations related to either severe or nonsevere impairments; rather, she asserts that her reports of further limitation required the ALJ to incorporate them. But the claimant has

pointed to no evidence other than her own assertions, and the Court therefore declines to find an error here. *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority."). *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

The claimant additionally asserts that the ALJ's evaluation of Dr. Fullenwider's consultative examination was deficient because the ALJ did not evaluate his opinion for persuasiveness. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c(a), 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and

consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

    Here, Dr. Fullenwider did not offer a medical opinion; rather, he reported the objective test results of his examination but offered no prognosis or impression. Furthermore, the ALJ thoroughly summarized his report, and further *incorporated* the objective findings in the report to find the state reviewing physician opinions unpersuasive (Tr. 15-16). Thus, the ALJ's opinion was sufficiently clear for the Court to evaluate it. The Court therefore finds that the ALJ set out the appropriate analysis and cited evidence supporting her reasons, *i. e.*, she gave clear and specific reasons that were specifically linked to the evidence in the record. Accordingly, the ALJ's determination here is entitled to deference and the Court finds no error in analyzing the opinions in the record. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") (citation omitted).

    Finally, the claimant contends that the ALJ erred in analyzing her subjective statements, particularly as related to her pain. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at \*3 (October 25, 2017).[3]  Tenth Circuit precedent is in alignment but characterizes the evaluation as a three-part test.  *See, e. g., Keyes-Zachary,* 695 F.3d at 1166-67, citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[4]  As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii)  any other factors concerning functional limitations.  *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at \*7-8.  An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole.  *See Casias,* 933 F.2d

---

[3]  SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996).  *See* SSR 16-3p, 2017 WL 5180304, at \*1.  SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character."  *Id.*  at \*2.

[4]  Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence.  *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*).  The Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

at 801.  An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted].  The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient.  *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

As outlined above, the Court finds that the ALJ set out the appropriate analysis and cited evidence supporting her reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, she gave clear and specific reasons that were specifically linked to the evidence in the record.  In particular, the ALJ noted inconsistencies between the claimant's subjective statements and the evidence of record, including findings on exam in contrast with her testimony as to her impairments, as well as reports to treating physicians that medication caused no side effects (including memory or concentration) while testifying that they did.  There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and her evaluation is entitled to deference.  *See Casias*, 933 F.2d at 801.

The ALJ specifically noted every medical record available in this case, gave reasons for her RFC determination, and ultimately found that the claimant was not disabled.  *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding.  We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting*

*Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (*citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946). Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 24th day of March, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**